NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL WENK, | |
| Plaintiff, | |
| v. | Civil Action No. 12-1908 (MAS) |
| CORRECTIONAL OFFICER CROSS et al, | |
| Defendants. | |
| MICHAEL WENK, | **OPINION** <br> **APPLIES TO BOTH ACTIONS** |
| Plaintiff, | |
| v. | Civil Action No. 12-3143 (MAS) |
| GARY M. LANIGAN et al, | |
| Defendants. | |

**Shipp**, District Judge:

These two matters come before the Court upon Plaintiff's submission of pleadings and numerous letters. Plaintiff will be granted *in forma pauperis* status for the purposes of both actions, and his submissions will be dismissed. Some claims will be dismissed with prejudice, while others without prejudice. With regard to the latter, leave to amend will issue.

### I.  Background

Plaintiff entered DOC custody on December 12, 2008; he is currently serving his term of imprisonment at the New Jersey State Prison, being housed at that institution

since July 2011. *See Wenk v. NJ DOC* ("*Wenk-I*"), 11-4430 (PGS). On July 28, 2011, the Clerk received Plaintiff's first civil complaint. *See Wenk-I*, ECF No. 1. On October 5, 2011, Plaintiff commenced another civil action in this District. *See Wenk v. NJ State Prison Ed. Dept.* ("*Wenk-II*"), 11-5774 (PGS), ECF No. 1. Four months later, on March 29, 2012, Plaintiff submitted his third civil complaint. *See Wenk v. Cross* ("*Wenk-III*"), 12-1908 (MAS), ECF No. 1. Judge Joel A. Pisano, then presiding over *Wenk-III*, took notice of Plaintiff's letters (which arrived together with his *Wenk-III* pleading and requested Plaintiff's placement in "protective custody") and directed as follows:

> The Court finds it warranted, solely out of abundance of caution and without making any factual finding or a legal ruling, to forward the within letter to the Office of Attorney General for the State of New Jersey. . . . [T]he Court leaves it to the Attorney General's independent discretion whether to forward Plaintiff's letter, Docket Entry No. 3, to Plaintiff's prison authorities and whether any actions are required by the Attorney General or by Plaintiff's prison officials in light of the allegations made in the letter[s] . . . .

*Wenk-III*, ECF No. 4, 1-2.

Shortly after commencing his *Wenk-III* action, Plaintiff initiated another civil proceeding. *See Wenk v. Lanigan* ("*Wenk-IV*"), 12-3143 (MAS). *Wenk-IV* was reassigned to the undersigned on the same date as *Wenk-III*. *See Wenk-IV*, ECF No. 2.

In his *Wenk-IV* complaint, Plaintiff asserted that his rights were violated because his outgoing letter was opened and returned to him with the stamp removed from the envelope; although that letter was addressed to a self-styled religious organization (Greenman Ministry), Plaintiff perceived opening and return of that letter as prison officials' "tampering" with his legal mail. *See Wenk-III*, ECF. No. 1 ("Compl."). In addition, he alleged that his rights were violated because the DOC stopped providing funds to indigent prisoners for purchases of stamps, envelopes and writing supplies;

instead, the DOC began furnishing each prisoner, on monthly basis, with a pad and a pen sufficient to write the amount of pages contained in the pad. *See id.* Plaintiff asserted that, having preference for lengthy writings, he found such pad and pen insufficient to meet his writing needs and, also, was disappointed with losing the opportunity to send letters to his friends/relatives as a result of the lack of free stamps and free envelopes. *See id.* Finally, on March 19, 2012, Plaintiff submitted his fifth civil complaint. *See Wenk v. Northern State Prison*, 12-1773 (DMC). Thus far, Plaintiff has deposited 331 pages on the dockets of this District.

## II. Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding *in forma pauperis* and to *sua sponte* dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or

"legal conclusions." *Id.* Thus, the court must first "take note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). The court must then accept as true all of a plaintiff's well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *See id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (2009). Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Moreover, Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims. See Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions

or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). Rule 18 (a) provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil 3d* §1655.

Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. *See* Fed. R. Civ. P. 20(a)(2).

### III.   Discussion

#### A.   Procedural Deficiencies

Here, Plaintiff's exceedingly lengthy submissions in *Wenk-III* and *Wenk-IV* fail to comply with the requirements of Rule 8. "District courts should not have to read and decipher tomes disguised as pleadings." *Lindell v. Houser*, 442 F.3d 1033, 1035 n.1 (7th

Cir. 2006). Therefore, Plaintiff's submissions in both *Wenk-III* and *Wenk-IV* are subject to dismissal for failure to meet Rule 8 requirements.

In addition, Plaintiff's submissions assert panoply of unrelated transactions. Such pleading practice violates Rules 18 and 20. *Accord Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241 (D.N.J. May 13, 2011) ("To put the [span] of this record in perspective, it is much like [Plaintiff's] version of Leo Tolstoy's 'War and Peace'") (quoting *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 891 (D. Ariz. 2007)). Therefore, Plaintiff's submissions made in *Wenk-III* and *Wenk-IV* are also subject to dismissal for failure to meet the requirements of Rules 18 and 20.[1]

Correspondingly, Plaintiff's submissions will be dismissed without prejudice, with leave to file an amended complaint in each of the above-captioned actions, provided that such amended pleadings are executed in strict compliance with Rules 8, 18 and 20. *Cf. Institutional Investors Grp. v. Avava, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (plaintiff must state his factual allegations in the fashion analogous to "the first paragraph of any newspaper story," in the sense that these allegations had to state the "who, what, when, where, and how" of the specific events at issue).

### B.  Substantive Invalidity of Certain Claims

Many of Plaintiff's allegations strive to assert claims against inmates. However, such claims are deficient for failure to meet the color of law requirement. To recover against a defendant under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal

---

[1] Since "[P]laintiff is the 'master of the claim,'" *Miller v. N.J. Dep't of Corr.*, 2012 U.S. Dist. LEXIS 35115, at *7 (D.N.J. Mar. 14, 2012), this Court is not in the position to guess which claims, from the panoply of challenges asserted in Plaintiff's submissions, Plaintiff would elect to litigate in *Wenk-III* and *Wenk-IV*.

Constitution or laws. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Groman*, 47 F.3d at 633.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." *Id.* at 638. The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, or (b) performed conduct otherwise chargeable to the State. *See id.* at 936-39. Inmates cannot qualify as state actors unless they act in concert with and upon express orders of prison officials. Since Plaintiff's submissions suggest no such facts, Plaintiff's claims against other inmates will be dismissed with prejudice. Such claims shall not be reasserted in his amended pleadings.

Analogously, Plaintiff's claims that his rights were violated when he was questioned by the medical personnel (as to whether he sustained any injuries during his period of confinement) and Plaintiff's claims alleging violation of his rights by officers' laughter, stare, or any comments unaccompanied by injurious physical acts will be dismissed with prejudice. Any form of questioning, as well as any act of purely verbal harassment, cannot qualify as violations of the Eighth Amendment. *See Stepney v.*

*Gilliard*, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing *Collins v. Graham*, 377 F. Supp. 2d 241, 244 (D. Me. 2005)). Thus, these claims too shall not be reasserted in Plaintiff's amended pleadings.

In the same vein, Plaintiff's allegations that his rights were violated when an officer placed Plaintiff's hand in an "uncomfortable" position, while escorting Plaintiff to his cell, will be dismissed with prejudice, since such challenges fail to state a claim upon which relief can be granted. Although Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *See Rhodes*, 452 U.S. at 346, 347. However, not all use of force is "excessive" under the Eighth Amendment and could rise to the level of a constitutional violation: it has been long established that *de minimis* use of force, which is itself not repugnant to human decency, cannot serve as a basis for an Eighth Amendment claim of excessive force. *See, e.g., Hudson v. Palmer*, 503 U.S. 517. Since the act of placing Plaintiff's arm in an "uncomfortable" position, even if true, is

less than *de minimis* use of force, Plaintiff shall not reassert this challenge in the amended pleadings.[2]

Moreover, Plaintiff's claims against prison or State officials cannot be based merely on the fact of these persons holding certain positions, even if these positions are supervisory: supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' *personal* involvement in the alleged wrongs. *See Iqbal*, 129 S. Ct. at 1948 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"). Therefore, purely *respondeat superior* claims will be dismissed with prejudice and shall not be reasserted in Plaintiff's amended pleadings.

Furthermore, the Court takes notice of Plaintiff's apparent misunderstanding of the term "legal mail." The term "legal mail" refers to, and only to, correspondence between the litigant and his/her attorney or between the litigant and the court, provided that such correspondence is contained in an envelope bearing a control number or otherwise alerting prison officials that the particular piece of mail comes from either an attorney or a court. *See Caldwell v. Folino*, 2009 U.S. Dist. LEXIS 86090, at *18-23 (W.D. Pa. June 10, 2009) (collecting cases and providing a detailed and careful analysis of the term "legal mail" on the basis of the guidance offered in *Fontroy v. Beard*, 559 F.3d 173 (3d Cir. 2009)). All mailings other than those between the litigant and the court or the litigant and his/her attorney do not qualify as legal mail. Correspondingly, Plaintiff's challenges associated with his mailing to his friends, relatives and self-styled

---

[2] Analogously, Plaintiff's challenges asserting that his rights were violated by the prison officials' directive to "squat and cough" are wholly without merit and should not be reasserted. *See, e.g., Cann v. Hayman*, 346 F. App'x 822 (3d Cir. 2009) (where officers conducted a legitimate visual search of an inmate, their directive to "squat and cough" did not violate the protections of either Fourth, Eighth or Fourteenth Amendments).

religious organizations (such as Greenman Ministry) cannot form a basis for a claim asserting interferences with Plaintiff's legal mail.

Next, the Court turns to Plaintiff's claim asserting denial of free stamps and free envelopes, and unlimited stationary supply. "In the First Amendment context, . . . a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication); *see also Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"); *Neumeyer v. Beard*, 301 F. Supp.2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their families and spouses have no "constitutional right to visitation" other than with legal counsel); *Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D. Pa. 1992) ("Inmates have no constitutional right to visitation. Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion"), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993). Thus, while – to the extent not inconsistent with their status as prisoners or with legitimate penological objectives – inmates have a First Amendment right to communicate with friends, relatives and organizations of their choice by means of visits, correspondence, and telephone calls, *see Owens-El v. Robinson*, 442 F. Supp. 1368, 1386 (W.D. Pa.) (citation omitted), the institution may place limits on these

communications if such limits are reasonably related to legitimate penological objectives. *See Overton v. Bazzetta*, 539 U.S. 126 (2003).

When a prison regulation or practice impinges on inmates' association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The reasonableness is assessed in light of the presence of a "valid, rational connection" between the prison regulation and a legitimate and neutral governmental objective, the presence of alternative means of exercising the right that remain open to prison inmates, and the impact accommodation of the asserted constitutional right would have on allocation of prison resources.[3] *See Turner*, 482 U.S. at 89-90 (citations omitted). In light of the foregoing, Plaintiff's allegations that he cannot write missives as lengthy or as numerous as he desires fail to state a cognizable claim and will be dismissed with prejudice. These claims shall not be reasserted in his amended pleadings.[4]

In addition, Plaintiff's allegations that his rights were violated when his outgoing mail was opened fail to state a claim upon which relief can be granted and, therefore, will be dismissed with prejudice. These allegations too shall not be reasserted in the amended

---

[3] Plaintiff's submissions seemingly suggest that the denial of free stamps/envelopes to indigent inmates, if true, was adopted by prison officials as a cost saving measure ensuing from the need to budget services provided to the inmates.

[4] In contrast, Plaintiff's claims, if such were intended, asserting that he was denied *all* communication with his relatives/friends will be dismissed without prejudice. In the event Plaintiff elects to reassert his challenges based on the alleged denial of free envelopes and free stamps, he shall aver that he has not been not availed to communications with his relatives/friends by means other than mail (i.e., that he has been denied all visitations, telephonic conversations, etc.) since the availability of theses alternative modes of communication necessarily negates his First Amendment claims.

complaint.[5] *See Caldwell v. Beard*, 305 F App'x 1 (3d Cir. 2008) (concluding that, under existing precedent, outgoing, nonprivileged mail could be opened and inspected).

Finally, Plaintiff shall not include in his amended pleadings (or in any submissions that might be filed in this District) any requests for this Court's assistance or interference with the proceedings allegedly commenced by Plaintiff in the state court(s). "District judges have no obligation to act as counsel or paralegal [even] to pro se litigants [litigating in federal courts]." *Pliler v. Ford*, 542 U.S. 225, 231-32 (2004).

## IV. Conclusion

For the foregoing reasons, Plaintiff will be granted *in forma pauperis* status for the purposes of both *Wenk-III* and *Wenk-IV*, and his submissions will be dismissed with limited leave to file amended complaints in accordance with the guidance provided herein. An appropriate Order accompanies this Opinion.

Michael A. Shipp
United States District Judge

Dated: 4/23/13

---

[5] To the extent Plaintiff strived to assert a challenge based on the alleged removal of the stamp from his outgoing envelope, Plaintiff's claim also fails and shall not be reasserted in his amended pleading. Even if this Court were to presume that the stamp (which, as Plaintiff admits, was gratuitously supplied to him by the prison) could be qualified as "Plaintiff's" private property unduly taken and/or harmed by prison officials, Plaintiff's challenge is unavailing, since New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees. *See* NJTCA, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001); *cf. Holman v. Hilton*, 712 F.2d 854, 857 (3d Cir. 1983); *Asquith v. Volunteers of America*, 1 F. Supp.2d 405, 419 (D.N.J. 1998), *aff'd*, 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available and adequate post-deprivation remedy providing all the process which is due, Plaintiff's allegations regarding the alleged loss of the stamp are necessarily subject to dismissal.